## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| CONCORDIA PARTNERS, LLC, | ) |
| | ) |
|     Plaintiff/Counterclaim Defendant | ) |
| v. | ) |
| | )   Case No. 2:12-cv-138-GZS |
| DAVID S. WARD, | ) |
| | ) |
|     Defendant/Counterclaim Plaintiff. | ) |
| | ) |
| | ) |

### ORDER ON MOTION TO DISQUALIFY

Before the Court is Defendant's Motion to Disqualify Brann & Isaacson as Counsel (ECF No. 11). On July 25, 2012, the Court held an evidentiary hearing on the Motion. For reasons explained herein, the Court now DENIES the Motion.

**I.    LEGAL STANDARD**

This Court has adopted the Maine Rules of Professional Conduct and, thus, applies Maine law in determining whether disqualification is warranted in this case. See D. Me. Local Rule 83.3(d). In Maine, the Law Court has held that disqualification of an attorney is appropriate only where the moving party produces evidence supporting two findings: (1) "continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of a particular ethical rule" and (2) continued representation by the attorney would result in "actual prejudice" to the party seeking that attorney's disqualification. Morin v. Maine Educ. Ass'n, 993 A.2d 1097, 1100 (Me. 2010). As the party moving for disqualification, Defendant "has the burden of showing the grounds for disqualification." Casco N. Bank v. JBI

Assocs. Ltd., 667 A.2d 856, 859 (Me. 1995).  Any order disqualifying an attorney must include "express findings of that ethical violation and resulting prejudice." Morin, 993 A.2d at 1100.

In this case, Defendant alleges that Brann & Isaacson's representation of Plaintiff created a concurrent client conflict of interest in violation of Maine Rule of Professional Conduct 1.7. Specifically, Defendant claims he was a client of Brann & Isaacson and the firm simultaneously began representing Plaintiff in this directly adverse matter.  In determining whether Plaintiff and Defendant were both "current clients" of Brann & Isaacson, the critical date is the date the complaint was filed.  See, e.g., Santacroce v. Neff, 134 F. Supp. 2d 366, 370 (D.N.J. 2001) (holding that for conflict purposes "the status of a client must be determined by the date of the filed complaint").

The existence of an attorney-client relationship is a question of fact.  See Estate of Keatinge v. Biddle, 316 F.3d 7, 8 (1st Cir. 2002) (citing Estate of Keatinge v. Biddle, 789 A.2d 1271, 1276 (Me. 2002)).  Under Maine law, "an attorney-client relationship arises when '(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.'" Estate of Keatinge, 789 A.2d at 1275 (quoting Board of Overseers of the Bar v. Mangan, 763 A.2d 1189, 1192-93 (Me. 2001) & State v. Gordon, 692 A.2d 505, 506 (N.H. 1997)).  To the extent that a lawyer creates an attorney-client relationship with an organization, Maine Rule of Professional Conduct 1.13 governs a lawyer's representation of such organizations and explicitly requires that a lawyer abide by Rule 1.7 if he seeks to represent directors, officers, members or shareholders in addition to representing the organization.  See M.R.P.C. 1.13(f).

## II. FACTUAL FINDINGS[1]

### A. Procedural History

On March 19, 2012, Plaintiff Concordia Partners LLC ("Concordia") filed the pending Complaint with the Cumberland County Superior Court. The Complaint sought a declaratory judgment against Defendant David S. Ward ("Ward") that would resolve an ongoing dispute between the parties regarding Ward's ability to force a sale of his membership units in Concordia back to the company. On April 25, 2012, Ward removed the case to this Court. In addition to answering the Complaint, Ward filed multiple counterclaims against Concordia and added Jeff McKinnon, President of Concordia, as a third-party Defendant.[2]

### B. Relationship Between Concordia Partners and David Ward

Concordia was formed in May 2001. The company is a direct marketer of consumer health products, specifically vitamins and nutraceuticals used by women. Jeff McKinnon, a founding member of Concordia, is the president of the company and currently maintains an ownership interest in excess of 60 percent. McKinnon and Ward have been friends for more than 32 years. McKinnon approached Ward about investing in Concordia when the company was formed. Ward became an investor shortly thereafter in September 2001. Ward currently

---

[1] In this section, the Court described the relevant facts that are established by a preponderance of the evidence on the current record. There are some irrelevant factual disputes that the Court has not resolved; most significantly, when and how Attorneys Eisenstein and De Vos first discussed whether Eisenstein might have any potential conflicts in representing Concordia. Attorney Eisenstein testified that he briefly raised the issue during the March 4, 2011 phone call. Attorney De Vos testified that he in fact first raised the issue during a post-lunch conversation between counsel on March 31, 2011. Whether one or both of these conversations occurred and the details of what might have been discussed do not impact the Court's ruling on the pending motion. Nonetheless, it is disconcerting that two experienced counsel could give such different accounts of their conversations and that neither counsel apparently made any effort to memorialize in writing his recalled conversation regarding Eisenstein's potential conflicts. As the Maine Rules of Professional Conduct explain issues involving conflicts should be confirmed in writing "to avoid disputes or ambiguities that might later occur in the absence of a writing." M.R.P.C. 1.7 Cmt. 20. The differing testimony of counsel in this case simply reinforces the need for such writings.

[2] The asserted counterclaims include Declaratory Judgment (Count I), Breach of Contract (Count II), Breach of Good Faith and Fair Dealing (Count III), Breach of Fiduciary Duty (Count IV), Corporate Oppression and Fraud on the Minority (Count V), and Dissolution (Count VI).

maintains an ownership interest of 21.95 percent in Concordia. Thus, McKinnon and Ward are the two largest shareholders in Concordia.[3]

At the time of his initial investment in Concordia, Ward signed a subscription agreement. The subscription agreement included a specific acknowledgement that Concordia's legal counsel was "not serving as counsel to prospective investors." (Concordia Partners LLC Membership Subscription Agreement (Pl. Ex. 18) at B.11.) However, Ward did not engage any counsel to review the agreement or provide him any advice in connection with his Concordia investment. In the agreement, Ward did explicitly indicate that he was an "accredited investor" with the requisite amount of income and assets to allow him to "bear the economic risks of [his Concordia] investment for an indefinite period of time." (Id. at B.7 & B.8.)

In late 2010, MacKinnon distributed proposed changes to Concordia's Operating Agreement. In response to an email from MacKinnon describing the changes, Ward indicated that he would be "giving it to my guy for review." (Pl. Ex. 4-A.) Upon review and consultation with his counsel, Ward indicated he did not support the proposed revisions. In the months that followed, McKinnon and Ward endeavored to find a compromise and thereby resolve their dispute without "spend[ing] money on lawyers." (Pl. Ex. 4-C.) However, when that effort failed, Ward had his long-time attorney, Lloyd De Vos, contact Martin Eisenstein of Brann & Isaacson, who served as counsel to Concordia. De Vos and Eisenstein first spoke by phone on March 4, 2011. Later in March, McKinnon and Eisenstein hosted Ward and De Vos for a meeting in Portland in an attempt to informally mediate the differences regarding the proposed changes to the Operating Agreement.

---

[3] The remaining interest in Concordia Partners is held by other individual investors, including Martin Eisenstein, a partner at Brann & Isaacson.

Ultimately, the parties did not resolve their differences. Nonetheless, in April 2011, McKinnon took the position that the proposed changes to the Operating Agreement had taken effect because seventy-three percent of the ownership interests voted in favor of the amendments. (Pl. Ex. 4-I.)

### C. David Ward and his Companies:  Early Advantage LLC & Great Books Summer Program LLC

David Ward is a publisher and direct marketer. He has a M.B.A. degree from Harvard University and has earned a reputation as a talented businessman. He presently operates two companies: Early Advantage LLC ("Early Advantage") and the Great Books Summer Program LLC ("Great Books"). Early Advantage LLC was formed in 1997. Ward owns 87.5 percent of Early Advantage. His wife and four children each maintain an ownership interest of 2.5 percent. Currently, Early Advantage has six full-time employees and at least three part-time employees. Great Books began as a division of Early Advantage and was spun off into its own LLC in 2003. The ownership structure of Great Books is the same as Early Advantage. Great Books runs summer reading programs for middle school and high school students. It maintains a year-round staff of at least two full-time employees but employs a much larger staff in the summer.

Early Advantage and Great Books have no designated general counsel. Rather, the companies have retained multiple attorneys over the years to provide legal advice and representation. Ward testified that he retained a Connecticut law firm to do the initial corporate formation of Early Advantage. Ward testified that he has used two different law firms to perform intellectual property work for his companies over the years. Beginning in 2000, Early Advantage retained Attorney Lloyd De Vos to perform legal work related to both tax matters and

5

international matters. Ward testified that he considers De Vos to be his long-time, personal attorney.[4]

### D. Relationship between David Ward and Brann & Isaacson

In addition to the counsel already mentioned, Early Advantage maintained an intermittent but constant attorney-client relationship with Brann & Isaacson between 1998 and May 20, 2012.

David Ward first came to know Brann & Isaacson when he worked for his prior employer, who retained the firm to consult on sales and use tax issues. In connection with starting Early Advantage, Ward first called Attorney George Isaacson in or around 1998 regarding questions his new direct marketing company had regarding sales tax issues. From that point through April 2012, Brann & Isaacson served as counsel to Early Advantage whenever Early Advantage had questions related to sales tax and additionally provided counsel on a variety of legal issues encountered by direct marketing businesses. Likewise, Brann & Isaacson provided similar representation for Great Books. For the most part, Attorneys David Bertoni and Dan Stockford have worked on these matters. Attorney Bertoni described Brann & Isaacson's representation of Early Advantage as "episodic" and related to narrow areas of corporate law. In fact, evidence admitted during the disqualification hearing suggests that Brann & Isaacson's representation has included compliance with state and federal laws on product safety,[5] labeling,[6] sweepstakes,[7] and sales tax[8] as well as on-line marketing and domain name registration.[9] Most

---

[4] In fact, on Ward's recommendation, Concordia briefly consulted with Attorney De Vos on some discreet transactional matters in 2007. See Pl. Ex. 14.

[5] See, e.g., Def. Ex. 3.

[6] See, e.g., Def. Exs. 4 & 8.

[7] See, e.g., Def. Exs. 10 & 12.

[8] See, e.g., Def. Exs. 7, 13 & 15.

of Brann & Isaacson's advice on these issues was not communicated to Ward directly. Rather, attorneys from Brann & Isaacson have communicated directly with employees of Early Advantage.

Although Brann & Isaacson has not handled Early Advantage's employment matters generally, David Ward called Brann & Isaacson in and around 2005 when a high-level Early Advantage employee was terminated and threatened to sue. In connection to this threatened litigation, Ward consulted with Dan Stockford of Brann & Isaacson extensively over a six month period. This consultation included providing additional background information about Early Advantage and Ward's ownership of the company.[10] (Def. Exs. 19 & Pls. Ex. 3-A.) Understandably, Ward sought to handle this initial consultation with counsel confidentially and therefore expressed concern when legal bills regarding this particular matters were not sent to Ward's attention directly in May 2005. (Def. Ex. 18.) Ultimately, when the terminated employee did file suit against Early Advantage in New York, Early Advantage was represented by Attorney Lloyd De Vos. See generally Daou v. Early Advantage LLC, 410 F. Supp. 2d 82 (N.D.N.Y. 2006).

At the hearing on the pending motion, Martin Eisenstein testified that he has never personally performed any work for Ward or his two companies. In fact, Eisenstein and Ward first met at the March 31, 2011 informal mediation session. In his role as the managing business partner of Brann & Isaacson, Eisenstein was aware that his firm had done work for Early Advantage. However, he did not believe that this work included any representation of David

---

[9] See, e.g., Def. Exs. 5, 6, 16 & 17.

[10] The Court does not find that this consultation included legal advice on any possible claims against Ward individually or that Ward had any objectively reasonable belief that he would be named as an individual defendant in the Daou litigation.

7

Ward individually. As a result of this belief, Attorney Eisenstein did not attempt to get informed consent, confirmed in writing, in connection with Brann & Isaacson's representation of Concordia on the present matter.

Over the years, the bills for Brann & Isaacson's legal work on behalf of Early Advantage and Great Books were sent to David Ward's attention.[11] Ultimately, the bills were not paid by Ward personally but out of the operating accounts for Early Advantage.

Upon receipt of the pending motion for disqualification and the firm's internal consideration of Ward's assertion that Brann & Isaacson not only represented his companies but had also represented him personally, Brann & Isaacson terminated its representation of Early Advantage and Great Books on May 20, 2012.

### E. Relationship between Concordia Partners and Brann & Isaacson

Brann & Isaacson have continually represented Concordia since approximately 2002. Martin Eisenstein, a shareholder in Concordia and partner at Brann & Isaacson, served as counsel to Concordia in connection with the 2010 changes to the Operating Agreement. Following the initial drafting of the proposed amendments, Eisenstein's role was limited to monitoring emails between McKinnon and Ward regarding the proposed changes. His representation took a more active role beginning on March 4, 2011, when Eisenstein received an expected call from Attorney Lloyd De Vos, who had been reviewing the proposed changes on behalf of Ward. During this call, De Vos indicated that he was representing David Ward.

When the issues disputed in this litigation went to formal mediation before retired United States District Court Judge Alan H. Nevas in March 2012, Concordia was represented at the mediation by Brann & Isaacson attorneys' Daniel Nuzzi and Martin Eisenstein. At no time

---

[11] See Pl. Ex. 11.

during the March 2012 mediation did Ward or Attorney De Vos indicate that they would not move forward with the mediation because of Brann & Isaacson's representation.[12]  Rather, Ward first explicitly sought disqualification of Brann & Isaacson via the pending motion on May 8, 2012.

## III.   DISCUSSION

Ultimately, the Court's decision to deny disqualification in this case is based on two conclusions: (1) Ward is not and never has been a client of Brann & Issacson, although his two companies were clients; and (2) Ward has not shown any actual prejudice will occur from Brann & Isaacson's representation of Plaintiff in this case.  The Court separately discusses the basis for each conclusion.

### A.   The Lack of An Attorney-Client Relationship

To find the asserted breach of Rule 1.7, the Court must first conclude that Brann & Isaacson had an attorney-client relationship with David Ward.  However, the record presented simply does not support a finding that Ward was an individual client of the firm at any time.  It is undisputed that Early Advantage and Great Books were long time clients of Brann & Isaacson as of March 19, 2012, the date the pending complaint was initially filed in state court.  In the parlance adopted by the Law Court in Mangan, Early Advantage and Great Books:  (1) sought advice from Brann & Isaacson, (2) the advice pertained to matters within the professional competence of the firm, and (3) the firm actually gave these two companies the desired advice.

---

[12] At the hearing, both sides maintained that the actual discussions that took place at the March 2012 mediation were privileged.  As a result, the Court makes no findings as to what was actually discussed during the March 2012 mediation.

See Mangan, 763 A.2d at 1193. To the extent that David Ward was personally involved in seeking or receiving said advice, he was acting as an officer and owner of those companies.

Nonetheless, Ward declares that he subjectively considers "my own personal interests and those of the family companies as intertwined and indistinguishable." (Ward Decl. (ECF 11-1) ¶ 6.) Thus, Defendant asserts that:

> In those instances in which a shareholder of a closely-held corporation (or a member of a closely-held limited liability company) owns, controls, and operates that corporation or limited liability company, that shareholder or member can reasonably expect that the attorney providing legal advice in connection with the operation of the corporation or the limited liability company has a personal attorney-client relationship with that shareholder or member.

(Def. Pre-Hearing Brief (ECF No. 41) at 5.) Notably, Defendant has not provided, nor has the Court found, any Maine case law adopting this assertion.[13] In fact, what Defendant proposes would amount to a "reverse piercing" of the corporate veil in the unique context of conflict disqualifications. In other contexts, courts in Maine have indicated that it is not appropriate for a shareholder to seek to disregard the corporate form "when it suits his convenience." In re Crowe Rope Indust., 307 B.R. 1, 7 (D. Me. 2004) (citing and quoting Sturtevant v. Town of Winthrop, 732 A.2d 264, 270 (Me. 1999) (internal quotations omitted)).

An individual, such as Ward, may consider himself "intertwined" with his business. However, when a business adopts a corporate structure, it "'isolate[s] liabilities among separate

---

[13] Moreover, the Court finds the cases cited by Defendant to be factually distinguishable. See, e.g., Discotrade Ltd. v. Wyeth-Ayerst Int'l, 200 F. Supp. 2d 355, 358 (S.D.N.Y. 2002) (finding a "single entity for conflict of interest purposes" when examining a corporation and its wholly owned subsidiary); Rosman v. Shapiro, 653 F. Supp. 1441, 1445 & nn.8 & 9 (S.D.N.Y. 1987) (acknowledging that "the issue of corporate versus individual representation must be decided on a case by case basis" and disqualifying counsel who has represented "a close corporation, consisting of only two 50% shareholders, created solely to facilitate the transaction which [was] the focus of the dispute" before the court); United States v. Edwards, 39 F. Supp. 2d 716, 732-33 (M.D. La. 1999) (disqualifying counsel who had formerly represented co-defendants when, in relevant part, the alleged representation involved a sole shareholder corporation applying for a gaming license, which required the individual owner to meet "suitability requirements" of "character, honesty and integrity"). In all of these cases, the courts have acknowledged that "[t]he determination whether the attorney represented the individual of the small closely-held corporation is fact-intensive and must be considered on a case-by-case basis." Edwards, 39 F. Supp. 2d at 732.

entities.'" Comm'r of Envtl. Prot. v. State Five Indus. Park, Inc., 37 A.3d 724, 732 (Conn. 2012) (reversing a trial court judgment that allowed reverse veil piercing of a closely held family company) (quoting Cascade Energy & Metals Corp. v. Banks, 896 F.2d 1557, 1576 (10th Cir. 1990)). By creating a separate legal entity with isolated liabilities, a corporation (or, in this case, a limited liability company) becomes a stand-alone entity to which the lawyer owes a duty of loyalty and independent judgment. This principle is clearly laid out in Maine Rule of Professional Conduct 1.13. See M.R.P.C. 1.13 Reporter's Note 2009 ("Lawyers who represent organizations must be mindful that their duties as lawyers are owed to the organization itself, notwithstanding the lawyer's interactions with the client through its individual agents."). Defendant apparently advocates for a "closely-held-corporation exception" to this principle. In the Court's view, such an exception would allow closely held corporations to use the corporate form as both a shield and a sword. In so doing, the exception would create confusion for lawyers who develop relationships with closely held companies as well as for the members of those companies.

Therefore, the Court declines to hold as a matter of law that Brann & Isaacson's attorney-client relationship with Early Advantage (or Great Books) was transformed into an attorney-client relationship with Ward individually simply because Ward controls these companies and each is wholly owned by the Ward family. See, e.g., In re United Utensils Corp., 141 B.R. 306, 308 (W.D. Pa. 1992) (holding that rendering advice to a sole shareholder "concerning matters relating to . . . official duties or to the general affairs of the corporation does not give rise to an attorney-client relationship between corporate counsel and the individual [shareholder]").

Additionally, as a matter of fact, the record presented does not support an objectively reasonable belief that Ward was an individual client of Brann & Isaacson. There is no evidence

11

that Ward used personal funds to pay Brann & Isaacson, nor is there any evidence suggesting that the actual legal advice Brann & Isaacson provided constituted personal legal advice for Ward. Additionally, despite the undisputed evidence that Brann & Isaacson represented Early Advantage and Great Books, there is no evidence suggesting the firm sought the necessary informed consent for dual representation required under M.R.P.C. 13(f). There is also no suggestion that Ward ever personally sought or received legal advice from Brann & Isaacson in connection with his Concordia investment or other matters unrelated to Early Advantage or Great Books.[14]

The record does reflect that Ward is an experienced entrepreneur who immerses himself in his business ventures. On many business matters, he has apparently acted without seeking advice from counsel based solely on his business judgment. As needed, in support of his various businesses, Ward sought out and received sophisticated legal advice from multiple attorneys. Beginning in 2000, Ward also developed an attorney-client relationship with Attorney De Vos. As of 2012, Ward himself characterized his relationship with De Vos as "long-term" and "personal" with De Vos acting "as a counselor" on a variety of matters. On the totality of this record, the Court readily concludes that an objectively reasonable person would not have believed that Ward was an individual client of Brann & Isaacson. See FDIC v. Ogden Corp., 202 F.3d 454, 463 (1st Cir. 2000) ("Courts customarily determine the existence *vel non* of an attorney-client relationship by evaluating whether the putative client's belief that such a relationship existed was objectively reasonable under all the circumstances.")

---

[14] Quite to the contrary, the evidence shows that Ward was well aware that Attorney Eisenstein was a Concordia shareholder and, as a result, felt that Eisenstein was already acting in dual capacities (i.e. shareholder and corporate counsel) during the 2011-2012 negotiations.

Having found that Ward was not a client of Brann & Isaacson, the Court need not address any issues of informed consent. Rather, the Court concludes that Defendant simply has not met his burden of proving his claimed violation of Rule 1.7.

### B.   The Lack of Actual Prejudice

Even if the Court were to find that Brann & Isaacson's representation of Concordia in this case violated Rule 1.7 or some other specific ethical rule, disqualification would not necessarily be the required. Rather, the Maine Law Court has held that "the moving party must [also] point to the specific, identifiable harm" he will suffer absent disqualification. Morin, 993 A.2d at 1100; see also Liberty v. Bennett, --- A.3d ---, 2012 ME 81 ¶¶11-14 & 21 (Me. June 21, 2012)(refusing to allow an interlocutory appeal of an order denying disqualification of counsel based on the 'actual prejudice' prong).

In this case, Defendant has made no attempt to show specific, identifiable harm. Nothing in the record suggests that Brann & Isaacson's representation of Early Advantage and Great Books gave them access to any confidential information that would disadvantage Ward in the pending litigation with Concordia. Therefore, the Court alternatively concludes that the request for disqualification must be denied based on Defendant's failure to satisfy the actual prejudice prong required under Morin.

### IV.   CONCLUSION

For the reasons just explained, the Court DENIES the Motion to Disqualify.

SO ORDERED.

                                       /s/ George Z. Singal
                                        United States District Judge

Dated this 6th day of August, 2012.