UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CONCORDIA PARTNERS, LLC, )<br>)<br>Plaintiff/Counterclaim Defendant )<br>v. )<br>)<br>DAVID S. WARD, )<br>)<br>Defendant/Counterclaim Plaintiff. )<br>)<br>) | Case No. 2:12-cv-138-GZS |

ORDER ON MOTION FOR JUDGMENT
ON THE PLEADINGS AND MOTIONS TO DISMISS

Before the Court are Concordia Partners LLC's ("Concordia" or the "Company") Motion For Judgment On The Pleadings (ECF No. 61), Counterclaim Defendant Concordia Partners, LLC's Motion To Dismiss With Incorporated Memorandum Of Law (ECF No. 62), and Third-Party Defendant Jeffrey McKinnon's Motion To Dismiss And Incorporated Memorandum Of Law In Support Thereof (ECF No. 63).  For the reasons explained herein, the Court GRANTS the Motion For Judgment On The Pleadings (ECF No. 61), GRANTS IN PART and DENIES IN PART Concordia's Motion To Dismiss (ECF No. 62) and GRANTS IN PART and DENIES IN PART McKinnon's Motion To Dismiss (ECF No. 63).[1]

I.   **LEGAL STANDARD**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the merits of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the non-

---

[1] In accordance with District of Maine Local Rule 7(f), the Court has determined that this matter can be decided without oral argument, and thus DENIES the Motion For Oral Argument (ECF No. 72).

movant's favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). While "detailed factual allegations" are not necessary, Twombly, 550 U.S. at 555, the complaint must "contain sufficient factual matter ... to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 570) (internal quotations omitted).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)). See also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim).

The standard for a motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6). See Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding whether to grant judgment for the moving party, the Court must "accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in [his] favor." Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). Judgment on the pleadings may be entered where the complaint fails to "contain sufficient factual matter to state a claim to relief that is plausible on its face." Grajales, 682 F.3d at 44 (internal citations omitted). Indeed, "[t]o cross the plausibility

2

threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Id. at 44-45.

## II. BACKGROUND

Concordia is a closely held Maine limited liability company with a principal place of business in Portland, Maine. Concordia was established in June 2001 by three individuals, including Third-Party Defendant McKinnon. Around September 2001, Defendant and Counterclaim Plaintiff, David Ward, invested in Concordia, acquiring approximately 17% of the membership units. Later, Ward acquired additional membership units, and he now owns approximately 22% of the outstanding membership units of Concordia.

At the time Ward acquired his membership units, he was presented with a copy of the Operating Agreement of Concordia Partners, LLC, dated June 1, 2001 (the "2001 Operating Agreement" or the "Agreement").[2] The 2001 Operating Agreement controlled numerous aspects of the governance of Concordia, including: (i) the right of any member with at least 15% of the membership units to appoint a manager; (ii) the right of any member to voluntarily withdraw from Concordia and the procedure for that withdrawal; (iii) the formula for calculating the fair value of membership units; and (iv) the obligation of each manager to exercise his powers "in good faith with a view to the interests of the Company and its Members and with that degree of

---

[2] Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the claims; or for documents sufficiently referred to in the complaint. When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgment on the pleadings. Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001); see also Grajales, 682 F.3d at 44 (stating that for purposes of a motion for judgment on the pleadings under Rule 12(c), the Court may augment the facts in the pleadings with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.") (internal citations omitted). Based on this exception, the Court has considered the 2001 Operating Agreement in ruling on the instant motions.

diligence, care and ski[ll] that ordinarily prudent persons would exercise under similar circumstances in like positions." (2001 Operating Agreement (ECF No. 62-1) at ¶ 6.5.)

In November 2010, McKinnon proposed amendments to the 2001 Operating Agreement (the "2010 Amendments"). Ward claims that the 2010 Amendments eliminated the rights enumerated above and increased the compensation payable to McKinnon from $150,000 to $250,000 per year. (See Second Am. Answer, Countercl., Third-Party Claim And Demand For Jury Trial (ECF No. 60) ("Answer and Counterclaim") ¶ 12.) Ward alleges that the 2010 Amendments were designed to: (i) freeze Ward out of any role in the management of Concordia; (ii) prevent Ward from receiving fair value for his membership units in the event that he withdrew from the Company; (iii) increase McKinnon's compensation; and (iv) to limit McKinnon's liability for misconduct as a manager of Concordia. Ward objected to the 2010 Amendments.

McKinnon did not submit the proposed 2010 Amendments for a vote in accord with customary and normal procedures. Rather McKinnon withheld the results of any voting until March 2011 and reported to Ward that the 2010 Amendments had been approved by 70% of the membership units. Upon learning of the vote, Ward asked McKinnon to alter the 2010 Amendments to address his concerns that the amendments would effectively freeze Ward out of the management of Concordia but McKinnon refused to make any changes. On April 19, 2011, McKinnon notified Concordia's members that the 2010 Amendments were retroactively effective to December 2010.

Around the same time as the 2010 Amendments, in late November 2010, Ward exercised his right to appoint a manager of Concordia, and appointed himself as manager. However, McKinnon refused to recognize Ward's right to appoint a manager. After November 2010,

4

McKinnon operated Concordia as a manager managed limited liability company with one manager, McKinnon.

In December 2011, Ward voluntarily withdrew, or attempted to withdraw, from Concordia and demanded payment for his membership interest in Concordia. Ward asserts that his withdrawal was conditional upon receiving payment for his membership units. McKinnon and Concordia refused to pay Ward for his membership units. Subsequent to the withdrawal, or attempted withdrawal, McKinnon and Concordia refused to provide Ward with information about Concordia, claiming that Ward is a "disassociated member" and therefore not entitled to any information about Concordia. Ward denies that he is a disassociated member of Concordia. Ward claims that under the 2001 Operating Agreement, he is entitled to payment for his membership units in accord with a formula set forth in Section 8.1 of that Agreement.

On March 19, 2012, Concordia filed a complaint for declaratory judgment in Maine State Court (ECF No. 8-1). The case was removed to this Court on April 25, 2012 (ECF No. 1). Through the Complaint, Concordia seeks a declaration that neither the 2001 Operating Agreement nor the Maine Limited Liability Company Act, 31 M.R.S.A. §§ 1501-1693 and 31 M.R.S.A. § 601 ("the Act"), require Concordia to purchase Ward's membership units or pay Ward for his interests. On August 14, 2012, Ward answered the complaint, filed counterclaims against Concordia and filed third-party claims against McKinnon (ECF No. 60).

**III. DISCUSSION**

Concordia has moved for judgment on the pleadings on its complaint for declaratory judgment. Specifically, Concordia asks that the Court find that Concordia has no obligation to pay Ward for his membership units under the 2001 Operating Agreement or under Maine law. In addition, Concordia has moved to dismiss the seven counterclaims asserted by Ward against

Concordia. Third-Party Defendant McKinnon has moved to dismiss certain of the third-party claims asserted by Ward against McKinnon. The Court will discuss each motion in turn.

### A. Motion For Judgment On The Pleadings

Before turning to the legal issues before the Court, the Court notes that there is a factual dispute as to whether Ward withdrew, conditionally withdrew or remains a member of Concordia. Concordia asserts that Ward withdrew and disassociated from Concordia in December 2011. However, in his Answer and Counterclaim, Ward asserts that "he voluntarily withdrew from Concordia in December, 2011 <u>and</u> demanded payment for his membership interest in Concordia." (Answer and Counterclaim ¶ 7 (emphasis added).) In the briefing on the motions before the Court, Ward interprets this and similar statements to mean that his withdrawal was conditional upon receiving payment for his membership units. (<u>See</u> Opp'n of Def. David S. Ward To The Mot. Of Concordia Partners, LLC To Dismiss Countercls. (ECF No. 70) ("Ward Opposition") at 5-6.) If Ward is not entitled to payment, he claims that he did not withdraw or disassociate from Concordia. On a motion for judgment on the pleadings and motions to dismiss, construing the facts in the light most favorable to the non-movant, the Court cannot say whether Ward did in fact withdraw from Concordia. This is a factual issue which the Court cannot resolve based on the pleadings alone. Despite this factual dispute, the Court can nonetheless reach a decision on the pending motions.

The issue before the Court is whether upon withdrawal, or attempted withdrawal, from Concordia, Concordia is obligated by statute or the 2001 Operating Agreement to pay Ward for his membership units.

First, Ward acknowledges that his claimed right of payment arises under the 2001 Operating Agreement and not as a function of Maine law. Instead, Maine law provides that,

6

except under circumstances not relevant here, "the limited liability company agreement governs relations among the members as members and between the members and the limited liability company." 31 M.R.S.A. § 1521(1). Therefore, the Court looks to the 2001 Operating Agreement.

In examining the 2001 Operating Agreement, the Court is guided by several principles of contract law. First, the determination of whether a contract is ambiguous is a question of law. Am. Prot. Ins. Co. v. Acadia Ins. Co., 814 A.2d 989, 993 (Me. 2003). A contract is ambiguous when it "is reasonably subject to two or more interpretations, or its meaning is unclear." Waltman & Co. v. Leavitt, 722 A.2d 862, 864 (Me. 1999). After determining that a contract is not ambiguous, its interpretation "must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." Portland Valve Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me. 1983). Accordingly, the Court should look to the whole instrument when interpreting a contract, and "a contract should be construed to give force and effect to all of its provisions and not in a way that renders any of its provisions meaningless." Am. Prot. Ins. Co., 814 A.2d at 993 (citations omitted).

Turning to the 2001 Operating Agreement, Section 9.1 of the 2001 Operating Agreement allows members to voluntarily withdraw from Concordia and provides in pertinent part that a "withdrawing Member shall be deemed a Transferring Member and the rights and obligations of the withdrawing Member shall be as specified in Article 8." (Operating Agreement ¶ 9.1.) Article 8 provides the rights and obligations of potential transferors of Concordia membership units, including "Transferring Members."[3] If Ward withdrew or withdraws from Concordia, his

---

[3] Under Article 8, there are three categories of restrictions on sales and transfers of membership units. First, Section 8.2 provides the restrictions applicable to "Selling Members." (Operating Agreement ¶ 8.2.) "Selling Members" means any member "who has received a Bona Fide Offer for the purchase of all or any part of his, her or its LLC units." (Id. ¶ 8.1(f).) A "Bona Fide Offer" is "an offer in writing made to a Member to purchase all or any part of a

rights and responsibilities are set forth under Section 8.3 of the 2001 Operating Agreement, "Restrictions Applicable to Transferring Members." (Id. ¶ 8.3.)

Under Section 8.3, before a member can transfer his or her interest in Concordia, the Transferring Member must notify the Managers of the company. In this regard, Section 8.3 provides:

> If any Transferring Member, desires to transfer . . . all of any part of the LLC Units owned by the Transferring Member and such proposed transfer is not subject to the provisions set forth in Section 8.2 hereof [pertaining to Selling Members with a Bona Fide Offer], the Transferring Member shall first notify the Managers stating the nature of the Offered Interest to be transferred and the name of the person to whom the same is to be transferred and the manner of and reason for such transfer and the consideration (if any) to be received.

(Operating Agreement ¶ 8.3.) Providing notice triggers a period during which Concordia, as an "Optionee" under Section 8.1(e), has the option to purchase the member's interest for its Fair Value: "For a period of forty-five (45) days after determination of Fair Value in accordance with Section 8.1 above . . . the Optionee shall have the option to purchase the Offered Interest at its Fair Value upon the Deferred Payment Terms." (Id. ¶ 8.3.) The same Section then goes on to state:

> If the Optionee (collectively) does not exercise the option to purchase the entire Offered Interest prior to the expiration of the Transfer Option Period, the Transferring Member may transfer the entire Offered Interest, provided the transfer occurs on the terms stated in the original notice received by the Managers to the person named therein and the transfer occurs within thirty (30) days following the expiration of the Transfer Option Period.

(Id.) Therefore, under Section 8.3, when a Transferring Member notifies Concordia of its desire to sell its membership units, Concordia as an "Optionee" has the right to purchase that member's

---

Member's LLC Units that the Member desires to accept." (Id. ¶ 8.1(a).) Second, Section 8.3 provides the restrictions applicable to "Transferring Members." (Id. ¶ 8.3) In contrast to a selling member, a "Transferring Member" is a member "who desires to transfer all or any part of his, her or its LLC Units, and who has not received a Bona Fide Offer for the LLC Units." (Id. ¶ 8.1(h).) Third, Section 8.4 provides the restrictions applicable to "Terminated Members." (Id. ¶ 8.4.) There is no indication by any party that Ward has received a Bona Fide Offer bringing him under the category of Selling Members or that he falls under the last category of Terminated Members.

interest in Concordia. However, nothing in Section 8.3 obligates Concordia to purchase a member's interest.

Ward asserts that the 2001 Operating Agreement is ambiguous because the Agreement does not address to whom a Transferring Member may transfer his or her membership units, if not to Concordia itself. Ward further asserts that if Concordia is not obligated to purchase the membership units, Ward, as a potentially withdrawing member, would be forced to transfer his membership interest to Concordia without any compensation. Accordingly, Ward claims that the more plausible interpretation of the 2001 Operating Agreement is that "Concordia takes on the role of the transferee upon the withdrawal of a member." (Opp'n Of Def. David S. Ward To the Mot. Of Concordia Partners, LLC For J. On The Pleadings (ECF No. 69) at 12.) Under Ward's interpretation, Concordia or its members have the opportunity to decide who will purchase the membership units of a withdrawing member, and if no members wish to purchase those units, Concordia must do so.

Ward's suggested interpretation of the 2001 Operating Agreement falls short for several reasons. First, Ward is correct that the 2001 Operating Agreement does not specify to whom a Transferring Member may transfer his or her shares, but that does not render the Agreement ambiguous. See Waltman & Co., 722 A.2d at 864 (providing that a contract is ambiguous when it is subject to more than one reasonable interpretation). Instead, the reasonable interpretation of the Agreement is that Ward has the right to transfer his membership interest, for consideration or otherwise, to any willing transferee, so long as he complies with the notice provisions of Section 8.3. (See Operating Agreement ¶ 8.3.) The definition of transfer encompasses more than selling for money. It also includes, "without limitation, exchanges or dispositions by way of

distribution pursuant to the terms of any will or trust." (Id.) Ward could thus make a gift of his membership interest.

Second, if Ward desires compensation for his membership interest and is unable to find a willing buyer, he does not forfeit his membership interest to Concordia as he asserts. Rather, he retains his ownership interest after withdrawal as a disassociated member with the right to transfer his ownership interest subject to the notice provision and Concordia's option to purchase under Section 8.3. (See Operating Agreement ¶¶ 8.3, 9.1.)

Third, Ward's proposed interpretation of the 2001 Operating Agreement reads conflicting terms into Section 8.3 of that Agreement. Under Sections 8.1(e) and 8.3, Concordia is an Optionee with the right under Section 8.3 to purchase a withdrawing or transferring member's shares. (Operating Agreement ¶¶ 8.1(e), 8.3.) However, Section 8.3 also provides that the Optionee may "not exercise the option to purchase." (Id. ¶ 8.3.) Stating that Concordia has both the option and obligation to purchase under Section 8.3 renders Concordia's choice void, thereby failing "to give force and effect to all of the [2001 Operating Agreement's] provisions." Acadia Ins. Co., 756 A.2d at 517.

In short, the only reasonable interpretation of the 2001 Operating Agreement is that a member who wishes to withdraw from Concordia has the right to transfer his or her membership units after complying with the notice provisions in Section 8.3. The transfer may be for monetary compensation if the member, such as Ward, can locate a willing buyer. Alternatively, if the withdrawing member is unable to locate a willing buyer for monetary compensation, the member may withdraw and still retain the ownership of his or her membership units. Under no interpretation of the 2001 Operating Agreement does Concordia have the obligation to purchase a withdrawing member's membership interest in the company. Instead, Concordia has the option

to purchase, and it may decline to exercise that option in compliance with the 2001 Operating Agreement. Therefore, Concordia's Motion For Judgment On The Pleadings (ECF No. 61) is GRANTED. In accordance with this ruling, the Court will enter a judgment in favor of Concordia declaring that "[n]either Concordia's operating agreement nor the Act permit Ward to force Concordia to purchase Ward's membership units as a result of Ward's dissociation or attempted withdrawal from Concordia." (Complaint For Declaratory Judgment (ECF No. 8-1) ¶ 15.)

### B. Concordia's Motion To Dismiss

Next, Concordia has moved to dismiss the seven counterclaims asserted by Ward against Concordia.

#### 1. Breach Of Contract (Count II)

In Count II, Ward asserts a claim for breach of contract, claiming that "[t]he refusal of Concordia and Mr. McKinnon to pay Mr. Ward for his membership units in accordance with the formula set forth in Section 8.1 of the 2001 Operating Agreement constitutes a breach of that Agreement." (Answer and Counterclaim ¶ 36.) As discussed with regard to the granted Motion For Judgment On The Pleadings, the 2001 Operating Agreement imposes no obligation on Concordia to purchase Ward's shares upon his withdrawal or attempted withdrawal from the company. Accordingly, for the reasons stated above, Count II of Ward's Counterclaim, Breach of Contract, is DISMISSED.

#### 2. The Equitable Claims (Counts I, VI, and IX)

Concordia asserts that the Court should dismiss each of Ward's three equitable claims because they fail to state plausible claims. Specifically, Concordia seeks dismissal of Ward's claim for declaratory judgment that the 2010 Amendments are null and void (Count I), dissolution

(Count VI), and declaratory judgment that if Concordia does not pay for Ward's membership units, he remains a member of Concordia (Count IX). Each of Concordia's arguments is predicated on the factual assertion that Ward has withdrawn as a member of Concordia. (See, e.g., Countercl. Def. Concordia Partners, LLC's Mot. To Dismiss With Incorporated Mem. Of Law. (ECF No. 62) at 6 ("Ward's withdrawal from membership in Concordia constitutes an absolute bar to his claim for dissolution of the Company."), 7 ("When [Ward] voluntarily withdrew from membership in December 2011, under the Act he forfeited his 'right to participate in the activities and affairs of the limited liability company. 31 M.R.S. § 1583(1)."), and 9 ("If the Court chooses . . . to reach the merits of Count IX, then the claim should be dismissed under Rule 12(b)(6), because Ward has no right to 'reassociation' under either the 2001 Operating Agreement or the Act – which are the exclusive sources for Ward's rights as a former member.").  Nevertheless, as the Court has previously indicated, Ward asserts that his withdrawal from Concordia was conditioned upon receipt of payment for his membership interest. (See Answer and Counterclaim ¶ 7; Ward Opposition at 5-6.) Construing the facts in the light most favorable to Ward, there is a factual issue as to whether Ward withdrew or conditionally withdrew from Concordia in December 2011 that cannot be resolved on a motion to dismiss. See Gargano, 572 F.3d at 48 (providing that the Court shall draw reasonable inferences in favor of the non-movant). This factual issue precludes finding that Ward has failed to state a plausible claim to relief on these three claims. Accordingly, the Court DENIES the Motion To Dismiss Counts I, IV and IX of the Answer and Counterclaim.

### 3. The Remaining Counterclaims (Counts V, VII & VIII)

Concordia has also moved to dismiss Count V, a claim for corporate oppression and fraud on the minority, Count VII, a claim for manager compensation, and Count VIII, a claim for

indemnification. With regard to these Counts, the Court believes that Ward has stated a plausible claim to relief in his Answer and Counterclaim. The legal and factual issues raised by these three claims are more appropriately evaluated on a fully developed record and motion for summary judgment. Therefore, the Court DENIES the Motion To Dismiss Counts V, VII and VIII.

In conclusion, the Court GRANTS the Motion to Dismiss Count II and DENIES the Motion with regard to Counts I, V, VI, VII, VIII and IX.

### C. McKinnon's Motion To Dismiss

Through McKinnon's Motion To Dismiss And Incorporated Memorandum In Support Thereof, McKinnon seeks dismissal of Count II for breach of contract and Count V for corporate oppression and fraud on the minority and for those portions of Count III for breach of duty of good faith and fair dealing and Count IV for breach of fiduciary duty that are based on McKinnon's role in preventing Ward from receiving fair value for Ward's membership units. The Court previously dismissed Count II because the 2001 Operating Agreement does not obligate Concordia to purchase Ward's membership units. Also, the Court previously held that Ward states a plausible claim for relief under Count V.

In Counts III and IV, Ward alleges that "McKinnon's actions freezing Mr. Ward out of any role in the management of Concordia and preventing him from receiving fair value for his membership units" constituted a breach of the duty of good faith and fair dealing (Count III) and breach of fiduciary duty (Count IV). (Answer and Counterclaim ¶¶ 38-42.) Similar to Count V, the Court determines that the legal and factual issues raised by Counts III and IV are best evaluated on a fully developed record and motion for summary judgment. Therefore, the Court GRANTS the Motion to Dismiss (ECF No. 63) Count II, and DENIES the Motion as to Counts III, IV and V.

## V. CONCLUSION

For the reasons explained herein, Concordia's Motion For Judgment On The Pleadings (ECF No. 61) is GRANTED. Counterclaim Defendant Concordia Partners, LLC's Motion To Dismiss With Incorporated Memorandum Of Law (ECF No. 62) is GRANTED as to Count II but DENIED as to the remaining counts. Third-Party Defendant Jeffrey McKinnon's Motion To Dismiss And Incorporated Memorandum Of Law In Support Thereof (ECF No. 63) is GRANTED as to Count II but DENIED as to the remaining counts. In addition, the Court DENIES the Motion For Oral Argument (ECF No. 72).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 15th day of February, 2013.