# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CONCORDIA PARTNERS, LLC, | ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| v. | ) Docket no. 2:12-cv-138-GZS ) |
| DAVID S. WARD, | ) ) ) ) |
| Defendant/Counterclaim Plaintiff. | ) |

## ORDER ON MOTION TO ENFORCE SETTLEMENT

Before the Court are the Motion to Enforce Settlement Agreement by Concordia Partners, LLC and Jeff McKinnon (ECF No. 94) and the Motion to Dismiss Counterclaims and Third-Party Claims Without Prejudice by David Ward (ECF No. 93). Following a conference of counsel on December 12, 2013, the parties agreed to submit a supplemental stipulated record and briefs and thereby submit the issues raised by these motions for resolution by this Court on the papers (ECF No. 109). Having received those materials and reviewed them, along with the entire record, the Court now GRANTS the Motion to Enforce Settlement and, as a result, finds Ward's Motion to Dismiss Counterclaims and Third-Party Claims Without Prejudice MOOT.

## I. LEGAL STANDARD

"A party to a valid settlement agreement may ask the courts to enforce that agreement when the other party refuses to comply." Silva v. F/V Silver Fox LLC, CIV.A. 13-10572-FDS, ___ F. Supp. 2d ___, 2013 WL 5970703 at * 2 (D. Mass. Oct. 31, 2013) (*citing* Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001); Petition of Mal de Mer Fisheries, Inc., 884 F. Supp. 635, 637 (D. Mass. 1995)). "The law does not require that an agreement be signed in

order for contracting parties to be bound." N. Maine Transp., LLC v. OneBeacon Am. Ins. Co., 820 F. Supp. 2d 139, 145 (D. Me. 2011); see also Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 6 (1st Cir. 2008) (fact that agreement contemplated "execution of a more formal agreement" did not preclude enforcement of hand-written agreement). However, "[i]n order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms sufficiently definite to enforce." Muther v. Broad Cove Shore Ass'n, 968 A.2d 539, 541 (Me. 2009) (citing Forrest Assocs. v. Passamaquoddy Tribe, 760 A.2d 1041, 1044 (Me. 2000)).

Ultimately, "[s]ettlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." Muther, 968 A.2d at 541 (*citing* Marie v. Renner, 946 A.2d 418, 420 (Me. 2008).) Thus, a "trial court may summarily enforce [a settlement] agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." Fid. & Guar. Ins. Co., 541 F.3d at 5.

## II. PROCEDURAL HISTORY & FACTUAL BACKGROUND

This case was initially filed in state court on or about March 29, 2012. On April 25, 2012, Defendant David Ward removed the matter to federal court. The case then proceeded on an ordinary scheduling track. On June 7, 2013, the parties jointly sought a stay of all scheduling deadlines indicating that they had "reached a settlement in principle that will resolve all claims" but would need 90 days to finalize the settlement. (Joint Mot. to Amend Scheduling Order (ECF No. 84) at 1.) On June 20, 2013, the magistrate judge convened a brief telephonic conference of counsel. Following that conference, the magistrate judge entered an order granting the joint

motion thereby giving the parties until September 18, 2013 to file a stipulation of dismissal (ECF Nos. 87 & 88).

The parties' joint request for a stay and pronouncement of a "settlement in principle" was the culmination of an extended settlement negotiation. The record now before the Court provides extensive evidence of those negotiations.[1] First, the record reflects that the two principals in this underlying business dispute, Defendant and Third Party Plaintiff David Ward ("Ward") and Third Party Defendant Jeff McKinnon ("McKinnon"), who is also President and CEO of Concordia Partners LLC, agreed to meet on or about March 13, 2013 "to try to resolve the case" without counsel present. (3/8/13 Email from Attorney Dilworth to Attorney Nelson (ECF No. 94-2 at PageID # 991).) All of the attorneys involved in this matter were aware of this meeting and agreed that these discussions between Ward and McKinnon would be subject to F.R.E. 408.

Following the meeting of Ward and McKinnon, Attorney Dilworth circulated "proposed settlement terms" for review by all counsel on March 29, 2013. (3/29/13 E-Mail from Attorney Dilworth to Attorneys De Vos & Nelson (ECF No. 94-2 at PageID # 993).) The record then reflects that additional direct discussions took place between Ward and McKinnon after which Ward indicated that the two "pretty much 'got there' in our phone calls" and that the attached outline reflected "the deal [Ward] can do." (4/18/13 E-mail from Ward to McKinnon (ECF No.

---

[1] To the extent that Ward has objected to much of this evidence based on F.R.E. 408, the Court overrules that objection. While much of the evidence submitted in support of the pending motion would not be admissible at a trial on the merits of the remaining claims, the evidence is not being offered to prove or disprove the validity or amount of any disputed claim, nor is the evidence Ward objects to being offered to impeach prior inconsistent statements. See, e.g., Glen Elec. Holdings GmbH v. Coolant Chillers, Inc., 1:10-CV-1109, 2013 WL 2407613 at *6 (W.D. Mich. May 31, 2013) (finding Rule 408 did not apply to "evidence was offered to prove the existence and terms of the settlement agreement itself").

3

111 at PageID # 1289).)[2] However, Ward also indicated that drafting still needed to occur and he was expecting it to be "entirely neutral." (Id.) Thereafter, Attorney Wertheimer circulated revised settlement terms to all counsel based on her understanding of "further communication between our clients regarding settlement." (4/24/13 Email from Wertheimer to Nelson & De Vos (ECF No. 94-2 at PageID # 995).) On April 30, 2014, Attorney Dilworth then circulated further revisions to the settlement terms that "attempted to address concerns regarding confidentiality." (4/30/13 E-mail from Dilworth to Nelson & De Vos (ECF No. 94-2 at PageID # 997).) Attorney Dilworth additionally wrote that, "If we are in agreement about these terms, I'm sure both sides would like to wrap up this case quickly." (Id.)

The next piece of correspondence in the record is a May 2nd e-mail from Attorney De Vos in which he indicated that the parties "are substantially there on the terms of the settlement." (5/2/13 E-mail from De Vos to Dilworth (ECF No 94-2 at PageID #1000).) Attorney De Vos noted that his mark-ups reflected two changes: one relating to Ward remaining a member of Concordia and the other relating to the potential for McKinnon to approve later voting by Ward in situations in which McKinnon might be required to abstain. (See id.) Attorney De Vos also indicated that Ward was seeking $50,000 in reimbursement costs but was flexible on the source of that reimbursement. (See id.) On May 6, 2013, Attorney Wertheimer circulated a revised term sheet and noted, in relevant part, that the May 2nd changes proposed by Attorney De Vos were "accepted . . . with two basic exceptions, both of which should be unobjectionable."

---

[2] Notably, in this e-mail Ward also indicated that he had received a copy of the complaint Concordia had "filed against Marcelle Pick and her company" and was unsure "where [Concordia] was headed with that." (4/18/13 E-mail from Ward to McKinnon (ECF No. 111 at PageID # 1289).) Nonetheless, Ward stated it was "time" for the settlement of this dispute.

4

(5/6/13 E-mail from Wertheimer to De Vos & Nelson (ECF No. 94-2 at PageID #1002).)[3] This e-mail additionally indicated that counsel was working with the insurer on the monetary terms and would be in touch regarding the monetary component soon. (See id.) On May 8, 2013, Attorney De Vos responded, in relevant part, as follows:

> We have reviewed the settlement term sheet among our team and, assuming that the $50,000 number is added to cover some of the costs involved as we have indicated and the drafting of the final documents reflect the term sheet, we are satisfied and are prepared to settle this litigation on the terms proposed.

(5/8/13 E-mail from De Vos to Wertheimer & Dilworth (ECF No. 94-2 at PageID # 1010).) Attorney De Vos then proposed that the parties inform the Court of the "settlement in principle" and ask for a stay of deadlines while they "finaliz[e] the paperwork to put this litigation behind us." (Id.)

The record next reflects an e-mail, dated May 28, 2013, from Ward to McKinnon. (5/28/13 E-mail from Ward to McKinnon (ECF No. 111-1 1291).) In this e-mail, Ward indicated that he and McKinnon had talked by phone and "agree that we have substantially come to a settlement understanding" with only a monetary issue remaining. Ward proposed that the monetary issue should be resolved by Concordia paying the difference between $50,000 and the amount the insurer is willing to pay. Beyond that, Ward expressed concern regarding "the drafting" and proposed they both remain closely involved to avoid problems. (Id.)

On June 4, 2013, Attorney Wertheimer emailed all counsel explaining that direct conversations between Ward and McKinnon have resulted in a monetary settlement term of $35,000. She asked counsel to confirm this understanding and indicated that upon confirmation, the settlement agreement would be drafted and she would notify the court of the settlement in

---

[3] The record includes a copy of the attached term sheet (ECF No. 94-2 at PageID # 1003-1008) (hereinafter "Final Term Sheet").

principle. (6/4/13 E-mail from Wertheimer to De Vos (ECF No. 94-2 at PageID # 1012).) In a response sent the very next business day, Attorney De Vos stated he was "happy to confirm your understanding" and agreed that the Court should be notified that there is an "agreement in principle." (6/5/13 E-mail from De Vos to Wertheimer (ECF No. 94-2 at PageID # 1014).) As previously indicated, the docket reflects that the parties jointly notified the Court of their settlement on June 7, 2013 via the filing of the Joint Motion to Amend Scheduling Order (ECF No. 84).

On June 11, 2013, Attorney Wertheimer circulated a draft set of settlement documents. (See 6/11/13 E-mail from Wertheimer to De Vos & Nelson & Attachments (ECF No. 94-3 at PageID# 1024-1063).) On June 14, 2013, Ward and McKinnon exchanged personal emails in which Ward expressed concern that he was not copied on an e-mail that was apparently sent to other members of Concordia alerting them to the settlement. McKinnon responded that he was "baffled" that Ward would be upset about not being included in "a short heads-up about the potential settlement" given Ward's more extensive knowledge of the deal. (6/14/13 E-mails between Ward & McKinnon (ECF No. 111-1 at PageID # 1293-94).)

On June 20, 2013, the magistrate judge held a telephone conference on the Joint Motion to Amend Scheduling Order. As reflected in the order and notice entered after that conference, all counsel agreed that a "settlement has been effected by mutual agreement of the parties" and the Court so noted while allowing the parties ninety days to file a stipulation of dismissal.

The record next reflects that Attorney Wertheimer e-mailed all counsel on June 28, 2013 asking when to expect any comments on the draft settlement documents. (See 6/28/13 E-mail from Wertheimer to De Vos & Nelson (ECF No. 94-3 at PageID # 1065).) Apparently having received no response to her June 28th e-mail, Attorney Wertheimer e-mailed all counsel again on

July 3, 2013. (See 7/3/13 E-mail from Wertheimer to De Vos & Nelson (ECF No. 94-3 at PageID # 1067).) Attorney Wertheimer sent a third e-mail requesting an update on July 12, 2013. (See 7/12/13 E-mail from Wertheimer to De Vos & Nelson (ECF No. 94-3 at PageID # 1070).) Finally, on July 25, 2013, Attorney Wertheimer sent a formal letter to opposing counsel indicating that in the absence of comments or confirmation by July 30, 2013, she would seek court assistance with finalizing the settlement.

Attorney De Vos responded to this final piece of correspondence via a short e-mail on July 30, 2013. (See 7/30/13 E-mail from De Vos to Wertheimer (ECF No. 94-3 at PageID # 1075).) He indicated that his "initial view" was that "there is still some work that should be done" on the proposed amended operating agreement. (Id.) Attorney Wertheimer responded the same day indicating that their side was willing to extend the deadline for comments through the close of business on Monday August, 5, 2013. (See 7/3/13 E-Mail from Wertheimer to De Vos & Nelson (ECF No. 94-3 at PageID # 1077).) Attorney De Vos responded after the close of business on August 5, 2013 with a three-line e-mail indicating that he had not completed his work but would endeavor to get comments circulated by the close of business on August 6, 2013. (See 8/5/13 E-mail from De Vos to Wertheimer (ECF No. 94-3 at PageID # 1077).) Attorney De Vos subsequently circulated his comments and a marked-up operating agreement on August 7, 2013. (See 8/7/13 E-mail from De Vos to Wertheimer & Dilworth (ECF No. 94-4 at PageID # 1079).)

Attorney Wertheimer responded in due course indicating that many of the changes proposed in De Vos' August 7th operating agreement mark-up differed and contradicted the May 6th term sheet. She described the proposed revisions as "an entirely inappropriate attempt to renegotiate the terms of the settlement." (See 8/9/13 E-mail from Wertheimer to De Vos &

7

Dilworth (ECF No. 94-5) at PageID # 1120.) Attorney De Vos then replied that his proposed changes were "conforming changes" to the Operating Agreement as contemplated by the Final Term Sheet. De Vos also noted "term sheets are fine, but the devil in is in the details of the operative documents." (8/9/13 E-mail from De Vos to Wertheimer & Dilworth (ECF No. 94-5 at PageID # 1124).) In the same e-mail, Attorney De Vos acknowledged that "all of the terms which were discussed and agreed upon as part of the settlement agreement are in the marked up draft" but that Ward, through his counsel, was now "proposing . . . to take a poorly drafted document rife with the possibility for dispute and clean it up." (Id. at PageID # 1125).) Attorney Wertheimer responded via a formal letter on August 13, 2013 in which she observed, "It is clear the parties have very different views of the purpose of the May 6, 2013 Settlement Term Sheet and very different interpretation of the terms contained therein." (8/13/13 Ltr. from Wertheimer to Nelson & De Vos (ECF No. 94-5 at PageID # 1128).) She proposed that the parties request a judicial settlement conference and requested a response by the close of business on August 14, 2013. (See id.) Attorney De Vos first responded that he needed additional time to confer with his client and then suggested that counsel have a conference call to discuss the status of the settlement. (See 8/14/13 E-Mail from De Vos to Wertheimer (ECF No. 94-5 at PageID # 1130) & 8/16/13 E-mail from De Vos to Wertheimer (ECF No. 94-5 at PageID # 1132).)

A conference call of counsel was held on August 20, 2013 with Wertheimer, Dilworth and De Vos participating. During this call, De Vos stated that Ward was uninterested in continuing this litigation. (Wertheimer Decl. (ECF No. 94-1) ¶27; Dilworth Decl. (ECF No. 94-7) ¶2; De Vos Decl. (ECF No. 96-1) ¶6.) By all accounts, Attorney De Vos laid out three options: (1) a one-day meeting during which the parties would aim to agree on further modifications of Concordia's Operating Agreement; (2) Ward could voluntarily dismiss his

8

claims without prejudice; or (3) execution of the settlement documents as provided on June 11, 2013. (Wertheimer Decl. ¶27; Dilworth Decl. ¶2; De Vos Decl. ¶6.) De Vos communicated that Ward was willing to accept any of these three options but preferred the first option.[4] In response, Wertheimer advised that Concordia and McKinnon were likely to choose the third option (execution of the settlement documents as provided), but that she and Attorney Dilworth would confer with their clients and advise De Vos of their decision. (Wertheimer Decl. ¶ 27; Dilworth Decl. ¶ 2; De Vos Decl. ¶7.)

Pursuant to her understanding of the options laid out during the August 20th call, on August 23, 2013, Attorney Wertheimer forwarded copies of the June 11th final settlement documents indicating that McKinnon & Concordia intended to proceed with execution of these documents as the final settlement of this matter. (See 8/23/13 E-mail from Wertheimer to De Vos (ECF No. 94-5 at PageID # 1134).) Despite repeated e-mails to Attorney De Vos, Attorney Wertheimer had not received any response to her August 23, 2013 correspondence as of the morning of Tuesday, September 10, 2013; she then sent an email indicating she would seek court assistance if no response was received by Friday. Thereafter, by the close of business on September 10, 2013, Attorney De Vos responded noting there had been an intervening telephone call and that, as a result, he was attaching a revised settlement agreement that they were prepared to sign.[5] (9/10/13 E-mail from De Vos to Wertheimer (ECF No. 94-6 at PageID # 1181).)

---

[4] The Court recognizes that this point is disputed. According to the declarations of Wertheimer and Dilworth, De Vos indicated that Ward was willing to accept any of the three options. (Wertheimer Decl. ¶27; Dilworth Decl. ¶2.) In contrast, Attorney De Vos' declaration indicates that he "explained that if McKinnon would not agree to the first option, Ward would choose option 2 or 3." (De Vos Decl. ¶7.) To the extent that this factual dispute needs to be resolved, the Court resolves it in favor of the factual finding listed above.

[5] The Court notes that this September 10th mark-up of the Settlement Agreement contains revisions not previously requested by Ward during negotiations, including a change in the general release, deletion of the provisions regarding confidentiality, non-disparagement and severability. (See Attachment to 9/10/13 E-mail (ECF No. 94-6 at PageID # 1182-88).) As indicated in the reply e-mail from Attorney Wertheimer, many of these proposed changes

9

On September 17, 2013, Attorney Wertheimer responded with specific comments to the version of the settlement agreement proposed by De Vos and attached another version of the draft settlement agreement. (See 9/17/13 E-mail from Wertheimer to De Vos (ECF No. 94-6 at PageID # 1190).) She noted in closing:

> Over three months have passed since the parties agreed to settlement terms. The deadline for filing the stipulation of dismissal is tomorrow, September 18. Please let us know by 5 pm tomorrow whether you will agree to the attached version of the settlement agreement and confirm your earlier agreement to each of the other draft documents emailed to you on June 11 and August 23 (including the Operating Agreement). Should we not hear from you or should you decline to agree to the attached Settlement Agreement and other settlement-related documents, we will advise the Court that a stipulation of dismissal will not be forthcoming and ask for the Court's assistance.

(Id.) The docket reflects that Attorney Wertheimer then notified the Court that a settlement had not been finalized as of the close of business on September 18, 2013 (ECF No. 89). In response to this correspondence, the magistrate judge held a status conference on October 2, 2013. At the conference, Attorney De Vos represented that his client, Ward, was no longer willing to execute the settlement agreement as agreed to on August 20, 2013. De Vos cited a change in the economic justification for the settlement based on an action involving Concordia pending in Cumberland County Superior Court that might force Concordia to stop doing business if the defendant in the Cumberland County action succeeded on her counterclaims. Because of this uncertainty, Attorney De Vos stated that his client was willing to dismiss this action without prejudice. (Wertheimer Decl. ¶ 34; Dilworth Decl. ¶ 3.)

After the conference, the magistrate judge issued an order re-establishing scheduling order deadlines and the parties filed the pending motions with Ward seeking to end this case by

---

were clearly inconsistent with the Final Term Sheet. (See 9/17/13 E-mail from Wertheimer to De Vos (ECF No. 94-6 at PageID # 1190).)

dismissing his claims without prejudice while Concordia and McKinnon sought to enforce the settlement.

## III. DISCUSSION

The Court assumes familiarity with its prior order on the parties' initial round of dispositive motions, which winnowed the claims in this case. See Concordia Partners, LLC v. Ward, No. 2:12-cv-138-GZS, 2013 WL 593862 (D. Me. Feb. 15, 2013). In relevant part, this earlier decision declared that Ward could not force Concordia to purchase his shares as a result of his dissociation or attempted withdrawal from Concordia. See id. at *6. However, a number of Ward's other counterclaims and third-party claims survived the motions to dismiss. Given the longstanding and ongoing business relationship between McKinnon and Ward, it is not surprising that the parties attempted an alternative means of resolving what remained of this litigation as of early 2013. The unintended result has been more litigation before this Court in the form of the two pending motions. The Court considers each motion in turn.

### A. Motion to Enforce Settlement Agreement (ECF No. 94)

The two-prong question for the Court is: whether a settlement agreement was reached that contains sufficiently definite terms and whether Ward agreed to be bound by those terms.

With respect to the substantive terms of the agreement, the Court finds that the June 11, 2013 draft agreement is sufficiently definite. It reflects all of the terms explicitly listed in the Final Term Sheet.[6] In his opposition to the Motion to Enforce Settlement, Ward claims there are "three prominent examples" of differences between the May 6, 2013 Term Sheet and the draft

---

[6] Given the substantive similarity between the May 6, 2013 term sheet and the June 11, 2013 draft settlement agreement, the Court need not and does not decide whether the term sheet alone contains sufficiently definite terms to be enforced.

settlement agreement that evince the failure of the parties to finalize definite terms. (Ward Response (ECF No. 96) at 10.)

First, Ward points to his ability to appoint a manager, which was a right he had under Concordia's 2001 Operating Agreement but lost under the 2010 Amended Operating Agreement. As Ward admits, the Final Term Sheet does not list the right to appoint a manager as one of the explicit amendments to be made to the Operating Agreement. Nonetheless, the term sheet does state that it will "add[ ] back in" another portion of the 2001 Operating Agreement relating to fair value formula that had been deleted as part of the 2010 Amendments. In short, like Concordia's Amended Operating Agreement, both the Term Sheet and the Proposed Second Amended Operating Agreement are silent on this issue of Ward's ability to appoint a manager. Thus, there is no difference between the Final Term Sheet and the June 11, 2013 draft. The only cognizable difference is between these documents and the 2001 Operating Agreement and this difference reflects an apparent compromise.[7]

Second, Ward indicates that paragraph 7(b) of the June 11th draft settlement agreement includes a general release not contemplated by the Final Term Sheet. (Ward Response at 10-11.) In fact, the Final Term Sheet states: "McKinnon, Concordia and Ward mutually release all claims against one another arising as of the date of the Settlement Agreement." (Final Term Sheet at PageID # 1004.) In the Court's assessment, the releases contained in paragraph 7 of the draft Settlement Agreement comport with this portion of the Final Term Sheet and reflect fairly

---

[7] The Court does acknowledge that re-establishing the ability of Ward to appoint a manager was "highlighted" by Attorney De Vos as part of his August 7, 2013 comments on the draft (See id. at PageID # 1079). Notably, the many other suggested changes contained in the August 7, 2013 mark-up of the proposed operating agreement (ECF No. 94-4 at PageID # 1095-1118) are not even mentioned in Ward's Response to the Motion to Enforce Settlement.

standard releases.  Additionally, the Court notes that the issue of the release being too broad was not raised in Ward's initial comments on the June 11th drafts.

Likewise, Ward's third and final specific objection regarding the non-disparagement language was not raised in the initial comments to the draft papers or the communications that followed.  With respect to this issue, the Final Term Sheet provides that Ward, McKinnon and Concordia would "enter into a non-disparagement agreement and agree upon a conciliatory joint statement that may be publicly released by the Company."  (Final Term Sheet at PageID # 1004.)  The Draft Settlement Agreement then provides for non-disparagement in paragraph 11.  Notably, in his August 9, 2013 e-mail to opposing counsel, Attorney De Vos indicated it was his understanding that "all information about a possible settlement was supposed to be agreed upon by both parties."  In his Response, Ward now objects to paragraph 11 as a "gag provision." (Ward Response at 11-12.)  The Court again concludes that the wording in the draft settlement agreement reasonably reflects the Final Term Sheet and Ward's apparent understanding of the agreement in August 2013.

Quite simply, the Court fails to see any significant or substantive differences between the May 6, 2013 term sheet and the June 11, 2013 draft documents.  The record reflects an effort by Ward and his counsel to delay finalizing the agreement as well as numerous attempts to get additional favorable terms added to the settlement after June 2013; some of Ward's proposed modifications reflect belated but good faith attempts to improve Concordia's operating agreement.  However, none of these efforts can override Ward's expressed intent to end this litigation on the terms contained in the June 11, 2013 draft settlement papers.

Turning to the issue of assent, the Court concludes that Ward communicated his intent to be bound to the settlement agreement on at least three different occasions.[8] First, on June 5, 2013, Attorney De Vos "confirmed" that Ward had agreed to settle this matter on the terms reflected on the May 6, 2013 term sheet. (6/5/13 E-mail from De Vos to Wertheimer (ECF No. 94-2 at PageID # 1014).) Second, having received a complete set of draft settlement documents on June 11, 2013, Attorney Nelson appeared before the magistrate judge on Ward's behalf on June 20, 2013. During that telephone conference, all attorneys agreed that a settlement had been effected and could be reported. Third, during the conference call on August 20, 2013 between Wertheimer, Dilworth and De Vos, Attorney De Vos indicated that Ward was willing to execute the settlement documents as provided on June 11, 2013, which was one of the three options discussed. By e-mail three days later, Attorney Wertheimer indicated that they were electing this option and re-sent a copy of the June 11, 2013 settlement agreement for Ward to finalize and execute.

To be clear, in the Court's view, the most compelling evidence of mutual intent to settle the remaining claims in this case are the parties' June 7, 2013 joint motion and the representations then made to the court during the June 20, 2013 telephone conference. By the time of the telephone conference, all counsel had the draft settlement papers in hand for over a week. Thus, the Court cannot countenance a later attempt to recharacterize clear representations that this case was settled into mere requests for more time to negotiate a settlement. Quite simply, counsel and the parties are bound by representations made to the Court, particularly

---

[8] Notably, at the in-person conference of counsel on December 12, 2013, all counsel agreed that all relevant statements made by counsel during the course of the settlement negotiations were made with authority. (See 12/12/13 Conference Tr. (ECF No. 106) at 8 & 12/12/13 Procedural Order (ECF No. 109).)

14

when the record shows—as this record does—that extensive, thoughtful negotiation preceded those representations.

What is less compelling but far more troubling are the incongruous accounts of the representations counsel made to each other during the conference call on August 20, 2013. In the Court's view, these difference are ultimately not critical or material.[9] Nonetheless, the Court finds that Attorney De Vos indicated his client's willingness to execute the June 11th draft settlement documents in order to end this litigation. He did so despite a belief by him and his client that the proposed second amended operating agreement would "sow [the seeds] for future problems" at Concordia and, thus, was not the best available option. (De Vos Decl. ¶6.)

Before this Court, Ward and his counsel have also sought to explain their belated demands for more changes to the Concordia operating agreement based on the "Pick Lawsuit." (De Vos Decl. ¶2.) The Court takes judicial notice of the fact that the initial "Pick Lawsuit" was filed by Concordia in state court on March 29, 2013. (See State Docket for Concordia Partners LLC v. Pick Enterprises LLC (ECF No. 12-1 in D. Me. Docket # 2:13-cv-415-GZS).) Pick first filed an answer and counterclaim on May 29, 2013. (See id.) Ward himself indicated he knew about the Pick litigation as of April 18, 2013 and cited it as a motivating factor for both sides to settle this litigation. See supra note 2. In short, it is apparent that Ward and his counsel knew about the Pick litigation on June 5, 2013, when they assented to the term sheet, and on June 20, 2013, when they had the June 11th draft papers in hand and represented the case as settled to the court. The Court fails to see how any development in Concordia's litigation with Pick between those dates and October 2, 2013 changed the landscape in a way that would justify Ward failing to execute the settlement papers.

---

[9] In other words, even if the Court were to credit Attorney De Vos' Declaration in its entirety, the Court would still find that Ward had assented to definite enforceable settlement terms based on earlier communications.

15

In any event, the reason for Ward's change of mind is irrelevant. See, e.g., Quint v. A.E. Staley Mfgr. Co., CIV.96-71-B, 1999 WL 33117190, at *3 (D. Me. Dec. 23, 1999) ("The fact that Quint changed her mind on the morning of August 10th before seeing the agreement in writing does not change the fact that there was a meeting of the minds on this agreement on August 9th."), aff'd, 246 F.3d 11 (1st Cir. 2001). Having communicated his assent to the settlement as proposed in the Final Term Sheet and June 11th draft papers, he is obliged to execute the documents and settle his remaining claims.

### B. Motion to Dismiss Counterclaims & Third-Party Claims Without Prejudice (ECF No. 93)

Ward has sought to avoid enforcement of the settlement by moving to dismiss his claims without prejudice. Concordia and McKinnon oppose this Motion and alternatively ask that they be awarded fees if the Motion is granted (ECF No. 95). Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court may only dismiss Ward's remaining claims "on terms that [it] considers proper." Generally, "[d]ismissal without prejudice should be permitted under the rule unless the court finds that the defendant will suffer legal prejudice. Neither the prospect of a second suit nor a technical advantage to the plaintiff should bar the dismissal." Puerto Rico Mar. Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981). Having considered the entire procedural history of this litigation, which is detailed in the Response (ECF No. 95), as well as the extensive settlement negotiations detailed in this Order, the Court concludes that the request for dismissal is being made at a critical juncture in the case and as a deliberate effort to avoid enforcement of the settlement. See, e.g., Canadian Nat. Ry. Co. v. Montreal, Maine & Atl. Ry., Inc., 275 F.R.D. 38, 41 (D. Me. 2011) (explaining the factors considered on a motion under Rule 41(a)(2)). Thus, while the Court concludes that the Motion to Dismiss is MOOT as a result of

the decision to enforce the settlement, it alternatively notes that it would DENY the Motion if it were required to rule upon the Motion prior to deciding the Motion to Enforce Settlement.

**IV.     CONCLUSION**

For reasons just explained, the Court hereby GRANTS the Motion to Enforce Settlement Agreement by Concordia Partners, LLC and Jeff McKinnon (ECF No. 94). The parties are hereby ORDERED to finalize and execute the Settlement Agreement and Release, contained on the docket at ECF No. 94-5 at PageID #s 1135-1173 within seven (7) days. The Court expects that the Stipulation of Dismissal will be filed as contemplated under the Settlement Agreement; upon the filing of that Stipulation of Dismissal, a final judgment will be entered and this case shall be closed.

In light of this ruling, the Court finds that the Motion to Dismiss Counterclaims and Third-Party Claims Without Prejudice by David Ward (ECF No. 93) is MOOT.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 9th day of July, 2014.